# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF VIRGINIA

## Richmond Division



FILED

SEP 17 2013

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

RECORD NO: 3:13cv634

## MEMORANDUM IN SUPPORT OF A
## WRIT OF HABEAS CORPUS AD SUBJICIENDUM

### PHILLIP JAMES OSTRANDER, #1124822,

Petitioner,

v.

### DIRECTOR, VIRGINIA DEPT. OF CORRECTIONS,

Respondent.

**Phillip James Ostrander, #1124822**
**Augusta Correctional Center**
**1821 Estaline Valley Road**
**Craigsville, Virginia 24430**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................i

STATEMENT OF THE CASE AND MATERIAL PROCEEDINGS........................................ 1

CLAIMS PRESENTED...................................................................... 4

    A.   Trial counsel rendered ineffective assistance, in violation of Ostrander's Sixth Amendment rights under the U.S. Constitution, when counsel misadvised Ostrander to reject the Commonwealth's plea offer to "cap" at 20 years Ostrander's sentence in exchange for pleading guilty to both solicitation to commit capital murder and attempted capital murder for hire, where counsel misadvised Ostrander that double jeopardy precluded Ostrander, as a matter of law, from being convicted of both attempted capital murder for hire and solicitation to commit capital murder. (Presented in state habeas petition: Circuit Court Nos.: CL09001788-01 & CL09001788-00) ...................................................................... 4, 20

    B.   The trial court erred in denying Ostrander's motion to dismiss on double jeopardy grounds, as Ostrander's plea of guilty to solicitation to commit murder, a lesser included offense, barred the subsequent prosecution for attempted capital murder. (Presented in App. Br., Record No.2194-06-1 and Pet. for App. to VA. S.Ct., p.2-3, Record No. 080733)........................................................ 4, 32

    C.   The trial court erred in ruling that venue was proper in the City of Chesapeake. (Presented in Pet. App. to VA. S.Ct., p.3, Record No. 080733). .. 4, 35

    D.   The trial court erred in refusing to grant a mistrial when the Commonwealth presented evidence of Ostrander's prior criminal record. (Presented in Pet. App. to VA. S.Ct., p.2-3, Record No. 080733). ....................................................... 4, 38

OSTRANDER'S INSTANT PETITION IS TIMELY............................................... 5

*FACTS, AUTHORITIES, AND STANDARD OF REVIEW*.......................................... 5

*(Cause & Prejudice)*................................................................. 5

*Cause Exists To Excuse Any Default.*................................................. 5

*Prejudice Exists To Excuse Any Default*............................................. 9

*Ostrander Qualifies for Equitable Tolling*......................................... 10

*Ostrander's Pro Se Status Justifies Excusing Procedural Bar.*...................... 13

*Ostrander Was Entitled To Effective Assistance Of Counsel In Habeas* .................. 16

**GENERAL STATEMENT OF THE FACTS** ............................................................. 18

**ARGUMENTS AND AUTHORITIES  (CLAIM – (A))** ............................................. 20

*Federal Court Deference To State Court Decisions* ........................................... 21

The Habeas Circuit Court Erred ......................................................................... 22

Ostrander Would Have Accepted The Plea Offer ............................................... 27

**STANDARD OF REVIEW** ..................................................................................... 29

Trial Counsel's Deficient Performance ............................................................... 29

Ostrander Was Prejudiced .................................................................................. 30

**ARGUMENTS AND AUTHORITIES  (CLAIM – (B))** ............................................. 32

**ARGUMENTS AND AUTHORITIES  (CLAIM – (C))** ............................................. 35

**ARGUMENTS AND AUTHORITIES  (CLAIM – (D))** ............................................. 38

**CONCLUSION** ...................................................................................................... 41

**DECLARATION OF TRUTHFULNESS** ................................................................. 41

## TABLE OF AUTHORITIES

Anderson v. Warden, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981)...........................26

Ashford v. Commonwealth, 47 Va.App. 676, 626 S.E.2d 464, (2006)...........................24

Barnes v. Thompson, 58 F.3d 971, 978 (4th Cir.1995)...................................18

Blockburger v. United States, 284 U.S. 299 (1932)........................................33

Boria v. Keane, 99 F. 3d 492, 496-97 (2d Cir. 1996).....................................32

Brown v. Ohio, 432 U.S. 161 (1977)...........................................................33

Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990).......................36

Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732 (2001).......................34

Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)....5

Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)..........16

Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)..14

Commonwealth v. Holdaway, 31 Va. Cir. 190 (Va. Cir. 1993).......................24

Commonwealth v. Hudgins, 269 Va. 602, 604-606, 611 S.E.2d 362 (2005).................33

Commonwealth v. Levin, 55 Va. Cir. 229 (Va. Cir. Ct. 2001)...........................23

Davis v. Commonwealth, 14 Va. App. 709, 419 S.E.2d 285 (1992)...............................36

Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).....................16

Fleenor v. Commonwealth, 200 Va. 270, 274-75, 105 S.E.2d 160, 163 (1958).............39

Green v. Commonwealth, 32 Va. App. 438, 449, 528 S.E.2d 187, 192 (2000)..............36

Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000) ................................11

Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.) (1988)...............................26

Knight v. Schofield, 292 F.3d 709, 711 (11th Cir.2002)...................................12

Lafler v. Cooper, 566 U.S. ___,132 S.Ct. 1376, 182 L.Ed.2d 398 (2012...........10, 15, 30

Lafler v. Cooper, 566 U.S. ___,132 S.Ct. 1376, 182 L.Ed.2d 398 (2012)......................30

Lawrence v. Florida, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007).....12

Lenz v. Washington, 444 F.3d 295, (4th Cir.2006), cert. denied, 548 U.S. 928, (2006) 21

Lowe v. Commonwealth., 535 S.E.2d 689, 33 Va.App. 583 (2000)................................23

Mackall v. Murray, 109 F.3d 957, 962-63 (4th Cir.) ......................................................16

Martin v. Commonwealth, 221 Va. 720, 722, 273 S.E.2d 778 (1981)............................33

Martinez v. Ryan, 132 S.Ct. 1309 (2012).......................................................................14

Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)...............5

Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648 (1986)..............................17

Murray v.Carrier, 106 S.Ct. 2639, 2645, 477 U.S. 478, 91 L.Ed.2d 397 (1986.)..............6

Ohio v. Johnson, 467 U.S. 493 (1984) ..........................................................................23

Ostrander v. Commonwealth, 51 Va. App. 386, 658 S.E. 2d 346 (2008) ......................25

Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.2000)..................................................13

Pollard v. Commonwealth, 220 Va. 723, 261 S.E.2d 328 (1980)...................................36

Poyner v. Murray, 964 F.2d 1404, 1425 (4th Cir.1992) .................................................17

Rea v. Commonwealth, 14 Va. App. 940, 944, 421 S.E.2d 464, 467 (1992)................23

Rider v. Commonwealth, 8 Va. App. 595, 597, 383 S.E.2d 25 (1989)...........................38

.Rodgers v. Angelone, 113 F. Supp. 2d 922......................................................... 10

Rouse v. Lee, 339 F.3d 238, 246 (4th Cir.2003)............................................................11

Sandvik v. U.S., 177 F.3d 1269, 1271 (11th Cir. 1999) .................................................13

Sansone v. United States, 380 U.S. 343 (1963)............................................................23

Schmuck v. United States, 489 U.S. 705, 716-17 (1989) ..............................................34

Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007) ....21

Strickland v. Washington, 466 U.S. 668 (1984) ................................................ 29

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ......... 18

Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985) ............ 39

United States v. Day, 969 F. 2d 39, 43 (3d Cir. 1992) ................................... 32

United States v. Gordon, 156 F. 3d 376, 380 (2d Cir. 1993) .......................... 32

Weeks v. Angelone, 176 F.3d 249, 273-74 (4th Cir.) (1999) ........................ 14

Wilson v. Commonwealth, 16 Va. App. 213, 429 S.E.2d 229, (1993) ........................... 39

Woodward v. Williams, 263 F.3d 1135 (10th Cir.2001) ................................. 13

Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) .. 22

## Statutes

Virginia Code Section 18.2-25 ................................................................ 1, 34

Virginia Code Section 18.2-29 ................................................................ 1, 34

Virginia Code Section 18.2-31 ............................................................ 1, 19, 34

Virginia Code Section 19.2-244 ................................................................... 36

## CONSTITUTIONAL PROVISIONS

Title 28 U.S.C. § 2244 (d)(1) .............................................................. 10,11

U. S. Const. Amend. V .......................................................................... 33

U. S. Const. Amend. VI ....................................................................... 4, 20

Va. Const. Art. 1, Sec. 8 ......................................................................... 33

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

PHILLIP JAMES OSTRANDER, #1124822,

        Petitioner,

v.                             CIVIL ACTION NO: _____

DIRECTOR, VIRGINIA DEPT. OF CORRECTIONS

        Respondent.

## MEMORANDUM IN SUPPORT OF A PETITION
## FOR A WRIT OF HABEAS CORPUS

COMES NOW, the Petitioner, Phillip James Ostrander (hereinafter "Ostrander"), and presents to this Honorable Court his memorandum in support of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## STATEMENT OF THE CASE AND MATERIAL PROCEEDINGS

1.     Ostrander was charged with solicitation to commit capital murder, in violation of Va. Code § 18.2-29, and attempted capital murder for hire, in violation of Va. Code §§ 18.2-31 (2) and 18.2-25.

2.     Ostrander appeared in the Circuit Court of the City of Chesapeake ("trial court") before the Honorable Randall D. Smith, Judge, on May 22, 2006, and entered a plea of guilty to the charge of solicitation to commit murder.

3.     At the same proceeding, prior to arraignment on the attempted capital murder charge, Ostrander moved to dismiss the charge of attempted capital murder based on double jeopardy grounds.  Judge Smith accepted the guilty plea and took the motion to dismiss under advisement.  The matter then proceeded to a jury trial, and the jury found Ostrander guilty of attempted capital murder and recommended a sentence of thirty years incarceration.

4.     On August 7, 2006, Judge Smith denied Ostrander's motions to dismiss based on double jeopardy and venue and imposed the jury's recommended sentence of thirty years.

5.     Ostrander filed a timely Notice of Appeal in the trial court and a Petition for Appeal to the Court of Appeals of Virginia, which granted Ostrander's petition for appeal with regard to the double jeopardy issue.  However, on March 18, 2008, the Court of Appeals affirmed the trial court's convictions and sentences. (Record No. 2194-06-1).  By Order dated July 30, 2008, the Virginia Supreme Court denied the petition for appeal.  (Record No. 080733).

6.     On July 30, 2009, Ostrander, by counsel, David Hargett, timely filed his petition for a writ of habeas corpus in the Chesapeake Circuit Court (hereinafter "habeas circuit court").  On September 24, 2010, with the habeas petition pending in the habeas circuit court, Hargett withdrew from the case leaving Ostrander to proceed *pro se.*

7.    By Order entered May 24, 2011, the habeas circuit court dismissed Ostrander's habeas petition. Ostrander, however, did not receive notice of said dismissal until February 19, 2013.

8.    Immediately, upon receipt of the court's Order of dismissal, Ostrander, on February 22, 2013, filed in the habeas circuit court his *Notice of Appeal* and *Motion to Reopen Time for Filing Appeal* to enable him to appeal the dismissal of his habeas petition.

9.    By correspondence dated March 3, 2013, the habeas circuit court returned to Ostrander his motion and instructed Ostrander instead to file a *Motion To Reinstate On The Active Docket.* On March 11, 2013, Ostrander filed said motion in the habeas circuit court.

10.    By Order entered March 20, 2013, the habeas circuit court, overruling the Respondent's objections, found "[Ostrander] was reasonably diligent in asserting the motion to reinstate on the active docket, and that substantial justice will be promoted by allowing such reinstatement on the active docket," and granted Ostrander's motion to reinstate.

11.    On April 5, 2013, Ostrander filed his notice of appeal in the habeas circuit court, and, on May 15, 2013, filed his petition for appeal to the Supreme Court of Virginia. Respondent filed a brief in opposition to petition for appeal wherein he argued, *inter alia*, that Ostrander's appeal to the Supreme Court of Virginia was not timely filed.

3

12.   By Order entered August 5, 2013, the Supreme Court of Virginia refused the appeal as untimely filed.  Ostrander hereby files the instant federal petition for a writ of habeas corpus and his memorandum in support thereof.

## CLAIMS PRESENTED

### CLAIM A (Presented on State Habeas)

A.   Trial counsel rendered ineffective assistance, in violation of Ostrander's Sixth Amendment rights under the U.S. Constitution, when counsel misadvised Ostrander to reject the Commonwealth's plea offer to "cap" at 20 years Ostrander's sentence in exchange for pleading guilty to both solicitation to commit capital murder and attempted capital murder for hire, where counsel misadvised Ostrander that double jeopardy precluded Ostrander, as a matter of law, from being convicted of both attempted capital murder for hire and solicitation to commit capital murder. (Presented in state habeas petition: Circuit Court Nos.: CL09001788-01 & CL09001788-00)

### CLAIMS B - D (Presented on Direct Appeal)

B.   The trial court erred in denying Ostrander's motion to dismiss on double jeopardy grounds, as Ostrander's plea of guilty to solicitation to commit murder, a lesser included offense, barred the subsequent prosecution for attempted capital murder. (Presented in App. Br., Record No.2194-06-1 and Pet. for App. to VA. S.Ct., p.2-3, Record No. 080733)

C.   The trial court erred in ruling that venue was proper in the City of Chesapeake. (Presented in Pet. App. to VA. S.Ct., p.3, Record No. 080733).

D.   The trial court erred in refusing to grant a mistrial when the Commonwealth presented evidence of Ostrander's prior criminal record. (Presented in Pet. App. to VA. S.Ct., p.2-3, Record No. 080733).

## OSTRANDER'S INSTANT PETITION IS TIMELY.

### FACTS, AUTHORITIES, AND STANDARD OF REVIEW

#### (Cause & Prejudice)

13.    By Order entered August 5, 2013, the Supreme Court of Virginia refused Ostrander's habeas appeal as untimely filed. Where "a state prisoner has defaulted his federal claim[] in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim[] is barred unless the prisoner" can either (1) satisfy the cause and prejudice standard, or (2) demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  (See, also, Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  A habeas petitioner can escape the procedural default doctrine through a showing of cause for the default and prejudice.)

14.    Ostrander does not dispute that the Virginia Supreme Court's refusal of Ostrander's habeas appeal as untimely constitutes an independent and adequate state bar to the consideration of his ineffective-assistance-of-trial-counsel claim on federal habeas, but he argues that cause and prejudice exist to excuse his default.

#### Cause Exists To Excuse Any Default.

15.    The Supreme Court has held, "the existence of cause for a procedural default must ordinarily turn on whether [Ostrander] can show that

5

some objective factor external to the defense impeded [Ostrander's] efforts to comply with the State's procedural rule." Murray v.Carrier, 106 S.Ct. 2639, 2645, 477 U.S. 478, 91 L.Ed.2d 397 (1986.) A showing that ... "some interference by officials," ... made compliance impracticable, would constitute cause under this standard. Id. at S.Ct. 2646. In the instant case, the objective external factor that made Ostrander's compliance with court rules regarding timeliness impracticable was that the habeas circuit court clerk and staff misled and misinformed Ostrander that the court had not yet ruled in his case and that his case was still pending.

16.    Specifically, on August 7, 2006, the trial court sentenced Ostrander to an active sentence of thirty years. Ostrander filed a timely Notice of Appeal in the trial court and a petition for appeal to the Court of Appeals of Virginia. On March 18, 2008, the Court of Appeals affirmed the trial court's convictions and sentences.

17.    On July 30, 2008, the Virginia Supreme Court refused the petition for appeal. On July 30, 2009, Ostrander, represented by Attorney David Hargett, timely filed his petition for a writ of habeas corpus in the Chesapeake Circuit Court ("habeas circuit court").

18.    On September 24, 2010, with the habeas petition pending in the habeas circuit court, Hargett withdrew from the case leaving Ostrander to proceed *pro se*. On March 4, 2011, Ostrander, then *pro se*, received respondent's Motion to Dismiss.

6

19.     Several times during the months after having received the motion to dismiss, Ostrander had family members contact the habeas circuit court to inquire about the status of his petition.  At each inquiry, the family member reported to Ostrander that the court advised the family member that the petition was pending, that Ostrander should be patient, and that the court had no time deadline in which to rule.

20.     In February 2012, Ostrander noticed the court and respondent of his transfer from the Nottoway Correctional Center to the Augusta Correctional Center where he is currently housed.

21.     By letter dated February 7, 2013, Ostrander again inquired of the habeas circuit court about the status of the petition.  (Exh. – (A)).  By correspondence postmarked February 13, 2013, and received by Ostrander on February 19, 2013, the court for the first time sent to Ostrander a copy of the court's order dismissing Ostrander's habeas petition.  The Order had been entered May 24, 2011.  Ostrander avers, and respondent does not dispute, that Ostrander did not receive the order from the habeas circuit court or from respondent between May 24, 2011, (entry of final Order) and February 19, 2013 (Ostrander's receipt of the court's order).[1]

22.     On February 22, 2013, Ostrander filed to the habeas circuit court his *Notice of Appeal* along with a *Motion to Reopen Time for Filing Appeal.*  On

---

[1]     Despite Attorney Hargett having noticed respondent and the habeas circuit court of his withdrawal from the case on September 24, 2010, the circuit court clerk likely mistakenly sent notice of the court's order of dismissal to Hargett who then failed to inform Ostrander of the dismissal.

March 3, 2013, the habeas circuit court returned Ostrander's motion to reopen

time for filing appeal (received by Ostrander on March 6, 2013) and instructed

Ostrander to re-file to the court a *Motion to Reinstate on the Active Docket* and a

second *Notice of Appeal*. The court further instructed Ostrander to send to the

court a filing fee of $29.00 for the Motion to Reinstate and $20.00 for the Notice

of Appeal. On March 11, 2013, Ostrander complied with the court's instructions.

23.    On March 18, 2013, respondent filed an objection to Ostrander's

motion to reinstate. There, respondent did not argue that Ostrander failed to

pursue diligently his habeas proceedings. Rather, the gravamen of respondent's

objection to Ostrander's motion to reinstate was that Ostrander received timely

notice in 2011 of the court's dismissal of Ostrander's habeas petition because,

respondent argued, although Ostrander did not receive notice from the court,

Ostrander in 2011 received the respondent's motion to dismiss to which

respondent asserted he attached a *proposed* order of dismissal.

24.    By Order entered March 20, 2013, the habeas circuit court,

overruling respondent's objections, found "[Ostrander] was reasonably diligent in

asserting the motion to reinstate on the active docket, and that substantial justice

will be promoted by allowing such reinstatement on the active docket," and

granted Ostrander's motion to reinstate.

25.    On April 5, 2013, Ostrander again filed his notice of appeal in the

habeas circuit court, and, on May 15, 2013, filed his petition for appeal to the

Supreme Court of Virginia. Respondent filed a brief in opposition to the petition

for appeal asserting, *inter alia*, Ostrander's appeal to the court was untimely. By Order entered August 5, 2013, the Supreme Court of Virginia refused the petition for appeal as untimely filed.

26.     Undoubtedly, but for the misinformation from the habeas circuit court clerk and staff that the court had not issued a final ruling in his case and that his petition was still pending, Ostrander would have timely filed his notice and petition for appeal, for as the record demonstrates (and the habeas circuit court found), Ostrander diligently pursued his habeas litigation. When on February 19, 2013, Ostrander received the habeas circuit court's order of dismissal, just three days later, on February 22, 2013, he filed both a notice of appeal and a motion to reopen the time for filing an appeal. When on March 6, 2013, Ostrander received the habeas circuit court's instructions to file both a Motion to Reinstate to Active Docket and another Notice of Appeal, three business days later, on March 11, 2013, he complied with the court's instruction. Moreover, the habeas circuit court in granting Ostrander's motion to reinstate the case to the active docket to enable him to appeal, correctly found that Ostrander was "reasonably diligent in asserting the motion to reinstate on the active docket, and that substantial justice [would] be promoted by allowing such reinstatement on the active docket."

<u>*Prejudice Exists To Excuse Any Default*</u>

27.     The prejudice Ostrander suffered because court personnel misinformed him about the status of his petition is obvious. Ostrander's habeas claim of ineffective assistance of counsel is substantive and compelling and there

existed a great probability that he would have prevailed in the State Supreme Court had it reached the merits of his habeas claim rather than refused the petition as untimely. (See, Argument, and Authorities as to Claim – (A), Pg. 20 - 32)[2] For all these reasons, Ostrander has shown cause and prejudice to excuse any default of his habeas claims.

## *Ostrander Qualifies for Equitable Tolling*

28. On August 7, 2006, the trial court sentenced Ostrander. On March 18, 2008, the Court of Appeals affirmed the trial court's convictions and sentences. On July 30, 2008, the Virginia Supreme Court refused the petition for appeal. Because Ostrander did not seek review by the United States Supreme Court, he then had one year and 90 days to file his petition for federal habeas review, that is, until October 28, 2009.[3] On July 30, 2009, Ostrander timely filed

---

[2] On direct appeal, the Virginia Appeals Court granted Ostrander an appeal as to his claim "*The trial court erred in denying Ostrander's motion to dismiss on double jeopardy grounds, as Ostrander's plea of guilty to solicitation to commit murder, a lesser included offense, barred the subsequent prosecution for attempted capital murder.* The Appeals Court's rationale for denying the double jeopardy claim underpins Ostrander's instant habeas IAC claim, "*Trial counsel rendered ineffective assistance, in violation of Ostrander's Sixth Amendment rights under the U.S. Constitution, when counsel misadvised Ostrander to reject the Commonwealth's plea offer to "cap" at 20 years Ostrander's sentence in exchange for pleading guilty to both solicitation to commit capital murder and attempted capital murder for hire, where counsel misadvised Ostrander that double jeopardy precluded Ostrander, as a matter of law, from being convicted of both attempted capital murder for hire and solicitation to commit capital murder.*"

Moreover, Ostrander included in his state habeas petition for appeal the intervening Supreme Court ruling in Lafler v. Cooper, 566 U.S. ___,132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). Lafler, which is favorably dispositive to Ostrander's IAC claim, was decided March 21, 2012, after the habeas circuit court entered its May 24, 2011,order dismissing Ostrander's habeas petition.

[3] 28 U.S.C. § 2244 (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final, with respect to limitations period for federal habeas petitions,

his petition for a writ of habeas corpus in the Chesapeake Circuit Court tolling his federal time with 90 days left. The circuit court denied the petition on its merits May 24, 2011.

29.    Because the habeas circuit court failed until February 19, 2013, to notify Ostrander of its ruling of May 24, 2011, the State Supreme Court on August 5, 2013, refused his notice and petition for appeal as untimely. Hence, the period from May 24, 2011 (date habeas circuit court denied petition), until August 5, 2013 (date State Supreme Court refused petition for appeal as untimely), arguably was not tolled as Ostrander did not have *pending* a properly filed application for State post-conviction review.[4]

30.    Ostrander here contends that he is entitled to equitable tolling for the period of time from May 24, 2011 (date habeas circuit court denied petition), until August 5, 2013 (date State Supreme Court refused petition for appeal as untimely), and that such equitable tolling (with 90 days remaining from August 5, 2013) makes the instant petition timely.

31.    Title 28 U.S.C. § 2244 allows for equitable tolling in those " 'rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation period against the party and gross injustice would result.' " Rouse v. Lee, 339 F.3d 238, 246 (4th Cir.2003)

---

on the last day he could have petitioned United States Supreme Court for writ of certiorari. Rodgers v. Angelone, 113 F. Supp. 2d 922; 28 U.S.C.A. § 2244;   U.S.Sup.Ct.Rule 13, subd. 1,

[4]    The American Heritage Dictionary of the English Language 969 (10th ed.1981) defines "pending" as "[n]ot yet decided or settled; awaiting conclusion or confirmation." On May 24, 2011, the habeas circuit court decided and settled the petition, regardless of whether Ostrander had notice of the denial on that date.

(en banc) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000)). To be entitled to equitable tolling, a habeas petitioner must show that (1) he has pursued his rights diligently and (2) some "extraordinary circumstance" prevented him from filing in a timely manner. Lawrence v. Florida, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007). The instant case presents precisely those facts federal courts deem sufficient to qualify for equitable tolling.

32.    Illustrative is Knight v. Schofield, 292 F.3d 709, 711 (11th Cir.2002). There, the court found tolling was warranted where the clerk of state Supreme Court failed for eighteen months to notify petitioner of decision denying relief and petitioner then demonstrated diligence in pursuing information when it did not do so. Specifically, the issue in Knight was whether the fact that Knight was not informed of the final disposition of his state application until March 4, 1998, entitled him to equitable tolling until that date, and if so, the time within which his petition had to be filed. The Knight court found,

> "[T]he fact that the Supreme Court of Georgia failed to notify Knight of its decision was certainly beyond Knight's control. Knight, as a pro se imprisoned defendant, exercised diligence in inquiring about the decision. It is understandable that Knight did not make any inquiries until February of 1998 because the Georgia Supreme Court clerk had assured him that he would be notified as soon as a decision was made. After over a year had passed, Knight, on his own initiative, contacted the clerk seeking information about the status of his case. Until the clerk responded, Knight had no way of knowing that his state remedies had been exhausted. The law is clear that he could not file a federal motion until his pending state application was denied. 28 U.S.C. § 2254(b) -(c). Therefore, he had every reason to delay such filing until he knew that state relief had been denied. Such circumstances meet the requirements of

12

Sandvik[5] so that Knight was entitled to have the time limitations of AEDPA equitably tolled until the date that he received notice that the state court had denied relief. See Woodward v. Williams, 263 F.3d 1135 (10th Cir.2001) (holding that lack of knowledge of state court decision may provide basis for equitable tolling when prisoner acts diligently); Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.2000) (holding that when prisoner diligently seeks information about the status of his case, the limitations period may be equitably tolled until he receives notice of its denial).

Knight, id. at 711.

33.    The undisputed facts Ostrander presents herein establish the cause

and prejudice to overcome any procedural time bar by the state court and, as in

Knight, id., are sufficient to establish that Ostrander is entitled to equitable tolling

in the federal courts.

### Ostrander's *Pro Se* Status Justifies Excusing Procedural Bar.

34.    Alternatively, Ostrander contends that because he was an indigent

*pro se* litigant during his habeas appellate proceedings, (rendered so when his

habeas attorney abandoned him mid-litigation) (Supra. pg. 6-7 & n. 1), and

because in Virginia the state habeas proceeding was Ostrander's first opportunity

to raise his claim that trial counsel was ineffective, such circumstances constitute

cause to excuse the State time bar.

35.    Ostrander acknowledges that the Supreme Court has determined

that "A petitioner has no constitutional right to assistance of counsel in state

habeas proceedings, even though claims of ineffective assistance of trial counsel

---

[5]    Sandvik v. U.S., 177 F.3d 1269, 1271 (11th Cir. 1999) Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.)

can only be raised on state collateral review." Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Virginia courts similarly have held "The alleged ineffective assistance of habeas counsel cannot constitute cause to excuse a petitioner's defaulted ineffective assistance of trial counsel claims." Weeks v. Angelone, 176 F.3d 249, 273-74 (4th Cir.) cert. granted on other grounds, 527 U.S. 1060, 120 S.Ct. 30, 144 L.Ed.2d 833 (1999). However, these cases predate the Supreme Court's recent ruling in Martinez v. Ryan, 132 S.Ct. 1309 (2012). The Martinez Court held:

> Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial....Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 1320.

36.    Ostrander has established cause for any procedural default of his instant claim of ineffective assistance at trial, and any such procedural default will not bar this Court from hearing said claim where, under Virginia law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding (habeas) and Ostrander was rendered *pro se* at the time the state habeas court entered its order and Ostrander should have filed his notice and petition for appeal.

14

37.     Admittedly, the facts of Ostrander's habeas proceedings may not fall four-square within <u>Martinez's</u> purview where Ostrander's habeas appellate proceedings that resulted in the procedural time bar are at first blush not the "initial-review collateral proceeding" contemplated by <u>Martinez</u>.  However, <u>Martinez</u> application is appropriate because the habeas circuit court lacked the favorably dispositive legal basis presented in the intervening U.S. Supreme Court ruling in <u>Lafler v. Cooper</u>, 566 U.S. ___,132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), (Supra. at pg. 10, n.2).  Therefore, because Ostrander and the circuit court lacked <u>Lafler's</u> legal basis when formulating and adjudicating, respectively, Ostrander's ineffective-assistance-of-trial-counsel claim, Ostrander, as a practical matter, could not present such claim to the habeas circuit court.  Thus, where Ostrander's ineffective-assistance-of-trial-counsel claim could not be presented to the habeas trial court, state habeas appellate review was the initial-review collateral proceeding contemplated by <u>Martinez</u>.

38.     Assuming, *arguendo*, that Ostrander's <u>Lafler</u>-less ineffective-assistance-of-trial-counsel claim to the habeas circuit court nevertheless constituted presentation of that claim in an initial-review collateral proceeding, Ostrander argues that <u>Martinez</u> should apply to what, then, is Ostrander's ineffective-assistance-of-habeas-appellate-counsel claim where Ostrander had no counsel when he failed timely to file his habeas appeal petition.

### <u>*Ostrander Was Entitled To Effective Assistance*</u>

### <u>*Of Counsel In Habeas Proceedings.*</u>

39.    Ostrander had no counsel when he failed timely to file his habeas appeal petition.  As a general rule, there is no constitutional right to effective assistance of counsel when collaterally attacking a conviction. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). An indigent defendant, such as Ostrander, however, does have a right to effective assistance of counsel on the first appeal as of right. <u>Douglas v. California</u>, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).  Ostrander reasons that because ineffective assistance of counsel cannot be raised on direct appeal in Virginia, state habeas is the first opportunity in which he could raise the issue. Therefore, he argues that this case falls within the holding of <u>Douglas</u>. Specifically, Ostrander argues that as an indigent defendant he was entitled to the effective assistance of counsel both when he raised his ineffective assistance claim in state habeas and on state habeas appeal because it was his first appeal as of right on that claim. <u>See</u>, <u>e.g.</u>, <u>Mackall v. Murray</u>, 109 F.3d 957, 962-63 (4th Cir.)  (holding that right to effective assistance of counsel extends to representation in the state habeas trial court with respect to any issues not directly appealable), vacated and reh'g en banc granted (May 21, 1997).

40.    Ostrander contends that because court records are public and easily available to counsel for inspection, effective counsel during Ostrander's habeas proceedings would have timely discovered the habeas circuit court's Order of

16

May 24, 2011, dismissing Ostrander's habeas petition where counsel then would have timely filed a notice and petition for appeal or, at least, informed Ostrander of the court's decision.  In other words, Ostrander argues that ineffectiveness of state habeas counsel — or, as relevant here, where Ostrander had no counsel for habeas appellate proceedings — excuses the procedural default (time bar) on the ineffective trial counsel claim.

41.     Again, in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.  Coleman, 501 U.S. at 750, 111 S.Ct. at 2565.  The thrust of Ostrander's argument on the Coleman/Douglas issue discussed above is that the ineffectiveness of state habeas counsel was cause for the procedural default. Assuming, arguendo, Ostrander is right about the import of Douglas (that ineffective assistance on state habeas is cause), he still must show actual prejudice.

42.     To show actual prejudice, Ostrander must demonstrate that the error, namely, failing to file a timely notice and petition for habeas appeal, worked to his "actual and substantial disadvantage," not merely that the error created a "possibility of prejudice."  Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648 (1986); Poyner v. Murray, 964 F.2d 1404, 1425 (4th Cir.1992).  In this case, actual prejudice depends on whether the pro se Ostrander, or any state habeas

17

counsel, would have succeeded had he not defaulted the ineffective assistance of trial counsel claim, which in turn would have led to a new trial for Ostrander.

43.    To succeed on the ineffective assistance of trial counsel claim, Ostrander would have to meet the two-prong test under <u>Strickland</u>, establishing both that his trial attorney's performance was deficient and that it prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); <u>Barnes v. Thompson</u>, 58 F.3d 971, 978 (4th Cir.1995). For the reasons presented herein, Ostrander has met <u>Strickland's</u> two-prong test. (See, Specific Facts, Argument, and Authorities as to Claim – (A), Pg. 20 - 32).

44.    Because Ostrander has demonstrated cause and prejudice to overcome the state time bar, shown cause and due diligence entitling him to equitable tolling, and, has shown that under <u>Martinez</u>, id, and <u>Douglas</u>, id., he is excused from any procedural default, this Court must reach the merits of the instant petition.

## GENERAL STATEMENT OF THE FACTS

45.    References to the trial transcripts of May 22, 2006, May 23, 2006, and the sentencing transcript of August 7, 2006, are designated May 22 Tr. Pg. __, May 23 Tr. Pg. __, and Sent. Tr. Pg. __, respectively.[6]

46.    On August 29, 2005, Ostrander was arrested for solicitation of another person to commit the capital murder of Timothy Miller ("Miller"), Va. Code

---

[6] In his petition for a writ of habeas corpus in the Chesapeake Circuit Court, Ostrander did "move[] that the entire underlying criminal file be made part of the record in the habeas case." Cir. Ct. Hab. Pet. Pg.4, ¶ 20, whereupon, by Order dated May 24, 2011, the Chesapeake Circuit Court directed that the criminal case of <u>Commonwealth v. Ostrander</u>, "is hereby made a part of the record in this habeas corpus matter."

§18.2-29 and the attempted capital murder of Miller, Va. Code §§ 18.2-31 (2) and 18.2-25.

47.     Prior to Ostrander's arrest, law enforcement in Chesapeake were notified that a Chesapeake resident had been in contact with Patrick Fleming ("Fleming"), an Ohio resident, in an attempt to hire Fleming to kill Miller. (May 23 Tr. Pg. 45). Fleming was a police informant who had previously assisted the Alcohol, Tobacco, and Firearms ("ATF") Task Force in Ohio in order to rid himself of pending indictments. (May 23 Tr. Pg. 42-43).

48.     The Chesapeake Police Department assisted ATF Agent Theodore Kroczak ("Kroczak") and Fleming with the investigation of Ostrander.

49.     Kroczak and Fleming came to Chesapeake to meet with Ostrander. Fleming introduced Kroczak to Ostrander as "Dominic Kavelli," the hit man from Cleveland. (May 23 Tr. Pg. 46).

50.     On August 28, 2005, Fleming called Ostrander's cell phone from a pay phone in order to schedule a time for them to meet. Fleming and Kroczak met Ostrander in a parking lot, entered Ostrander's vehicle, and rode around to various locations. At one point during the trip, Ostrander stopped at an ATM machine and withdrew $300. (May 23 Tr. Pg. 48-49).

51.     Kroczak testified that not only did Ostrander provide him and Fleming with $300, but Ostrander also provided them with a small piece of paper that contained what Ostrander believed to be the license plate numbers of Miller's vehicles. (May 23 Tr. Pg. 53).

52.     While they were in Ostrander's vehicle, there was a conversation about Ostrander paying Fleming and Kroczak $5,000 after the "hit" had occurred. Further discussions involved how the "hit should take place." (May 23 Tr. Pg. 62).

53.     Later, after conferring with Fleming and Kroczak at a Virginia Beach restaurant, Ostrander departed in his vehicle whereupon Chesapeake police officers stopped, questioned, and, ultimately arrested him. (May 22 Tr. Pg. 85-86).

## ARGUMENTS AND AUTHORITIES (CLAIM – (A))

Trial counsel rendered ineffective assistance, in violation of Ostrander's Sixth Amendment rights under the U.S. Constitution, when counsel misadvised Ostrander to reject the Commonwealth's plea offer to "cap" at 20 years Ostrander's sentence in exchange for pleading guilty to both solicitation to commit capital murder and attempted capital murder for hire, where counsel misadvised Ostrander that double jeopardy precluded Ostrander, as a matter of law, from being convicted of both attempted capital murder for hire and solicitation to commit capital murder. (Presented in state habeas petition: Circuit Court Nos.: CL09001788-01 & CL09001788-00)

54.     Trial counsel rendered ineffective assistance when he advised Ostrander to reject the Commonwealth's plea offer to "cap" at 20 years Ostrander's sentence in exchange for his pleading guilty to both solicitation to commit capital murder for hire and attempted capital murder for hire because, counsel erroneously advised, the solicitation charge was, *inter alia*, a lesser included offense of the attempted capital murder charge such that if Ostrander

pleaded guilty to *solicitation* to commit capital murder for hire, double jeopardy would bar a conviction for *attempted* capital murder for hire.

55.    At the beginning of trial, the Commonwealth offered to Ostrander the plea deal. (May 23 Tr. Pg. 123).  Counsel advised Ostrander that if he pleaded guilty to solicitation to commit capital murder for hire, double jeopardy would bar his being tried or convicted for attempted capital murder for hire.

## *Federal Court Deference To State Court Decisions*

56.    "The federal habeas statute [28 U.S.C. § 2254(d)] dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.  The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir.2006), cert. denied, 548 U.S. 928, 127 S.Ct. 10, 165 L.Ed.2d 992 (2006) (internal quotation marks and citation omitted).  "The question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007).

57.    Thus, where the state court has adjudicated a claim on the merits, federal habeas relief is appropriate only if the state court's judgment resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

21

States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)

58.    Because the state Supreme Court refused Ostrander's appellate habeas petition as untimely, and where, for the reasons provided, Ostrander has overcome any procedural default as to the untimely petition, this Court must look to the habeas circuit court decision to apply federal deference. See, Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (noting that a federal court will "look through" later state court decisions to the last reasoned decision when reviewing a state court denial of claims raised in a habeas petition).

<u>The Habeas Circuit Court Erred</u>

59.    The Habeas Circuit Court's ruling that trial counsel was not ineffective was both contrary to and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States and was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

First, the circuit court found,

Counsel's theory of the case was that if Ostrander pleaded guilty to solicitation, double jeopardy would bar his being tried on the charge of attempted capital murder for hire. Although both the trial and appellate courts rejected counsel's theory, the tactic [to reject the plea offer on the basis that double jeopardy precluded prosecution for attempted capital murder] was not 'fatally flawed,' as the

22

Petitioner now contends.   Counsel made good faith arguments in support of his position and the fact that he did not prevail does not mean he was ineffective.

(Hab. Cir. Ct. Order, Pg.3 ¶7 (5/24/2011)).

60.     Counsel's advisement and theory to have Ostrander plead guilty to the solicitation charge to escape a conviction on the attempted capital murder charge was incompetent and wholly unreasonable where the law was well-settled that, (A):  Pleading guilty to one charge, while proceeding to trial on the other was not a "separate prosecution" for purposes of double jeopardy, see, e.g., Ohio v. Johnson, 467 U.S. 493 (1984); Rea v. Commonwealth, 14 Va. App. 940, 944, 421 S.E. 2d 464, 467 (1992); and (B): Solicitation to commit capital murder is not a lesser included offense of attempted capital murder for hire. (May 22 Tr. Pg. 12 – 19); (Commonwealth v. Levin, 55 Va. Cir. 229 (Va. Cir. Ct. 2001)) (Defendant also argues that the indictments charging incest should be dismissed in that incest is a lesser included offense of rape.); Lowe v. Com., 535 S.E.2d 689, 33 Va. App. 583 (2000); (A lesser included offense is an offense which is composed entirely of elements that are also elements of the greater offense.)

61.     Thus, in order for one crime to be a lesser included offense of another crime, every commission of the greater offense must also be a commission of the lesser offense.  Sansone v. United States, 380 U.S. 343 (1963); An offense is not a "lesser included offense" of another if each offense contains an element that the other does not. Lowe, 33 Va.App. at 589-90.  The

determination of what offenses are lesser included offenses of the crime charged is based on the fundamental nature of the offenses involved, not on the particular facts of a case.) Levin, id. (See, also, Commonwealth v. Holdaway, 31 Va. Cir. 190 (Va. Cir. 1993)) (A fine line of demarcation exists between solicitation and attempt. "Some discussion has arisen as to whether solicitation is an attempt, but it seems well established that to invite or solicit one to commit crime, where no attempt is actually made to commit it, at least in some cases, is indictable at common law as solicitation. Solicitation, or inciting to crime, does not proceed to the point of some overt act in the commission of crime. When it proceeds to this point it becomes an attempt to commit crime and is indictable as such.")

62.     Moreover, in the instant case, even if the solicitation charge were a lesser-included offense, which it is not, the result would be that the Commonwealth would dismiss the lesser-included offense, rather than the greater offense.

63.     Additionally, counsel did not make "good faith arguments" where the Court of Appeals of Virginia had rejected an identical argument in its published decision in Ashford months before Ostrander's trial. See, Ashford v. Commonwealth, 47 Va. App. 676, 626 S.E. 2d 464, (2006) (Trial court did not abuse its discretion in failing to require Commonwealth to elect between charges of attempted capital murder for hire and solicitation of capital murder for hire, as the solicitation and attempt were both parts of a common scheme or plan; actions which took place were part of unbroken chain of events, in that defendant's

solicitation of fellow inmate to kill defendant's wife prompted inmate's discussions with his attorney, which in turn led to defendant hiring an undercover police investigator posing as a "hit man.") See, also, Ostrander v. Commonwealth, 51 Va. App. 386, 658 S.E. 2d 346 (2008) (A defendant's election to plead guilty at trial to one charge and not guilty to another charge arising from the same criminal act neither transforms the single prosecution into two separate prosecutions nor captures for the defendant any special protections against successive prosecutions under the Double Jeopardy Clause.)

64.    That counsel's argument was fatally flawed is underscored where, at the beginning of trial, and in response to counsel's argument to the court that Ostrander's guilty plea to solicitation of capital murder precluded his conviction for attempted capital murder for hire, the Commonwealth fully apprised counsel (and the court) of the Ashford holdings, describing Ashford as "on point to the present matter." (May 22 Tr. Pg. 15). Thus, where counsel's theories, tactics, and argument were contrary to well-settled law, and where the Court of Appeals of Virginia (through Ashford), and the Commonwealth (through Ashford-based argument at trial), timely apprised counsel that his arguments were contrary to law, the circuit court could not reasonably characterize counsel's theories, tactics, and argument as having been made in "good faith."

65.    Secondly, the court found,

With regard to the charge of attempted capital murder for hire,
Ostrander testified under oath he knew he had been offered a plea

25

agreement with "a cap of 20 years incarceration for both of the two charges," and that after "frequently" discussing the agreement with counsel, he rejected the offer and decided to go to trial. (Tr. 5/23/06, pp. 123-24). Ostrander is bound by his representations to the Court. See Anderson v. Warden, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981). This Court rejects as self-serving the petitioner's current allegation that his plea of not guilty to the attempted capital murder charge was based on counsel's misadvice. See Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.) (1988).[7]

(Hab. Cir. Ct. Order, Pg. 4 ¶ 8 (5/24/2011)).

66.    That Ostrander knew the Commonwealth had offered him a plea agreement, and that after discussing the plea offer Ostrander rejected the plea, is not the material issue for consideration. The issue before the court was (and is) not *whether* Ostrander decided to reject the plea offer, but *why* he decided to reject the offer.

67.    During trial, outside the presence of the jury, counsel questioned Ostrander regarding his decision not to testify and his rejection of the Commonwealth's plea offer. (May 23 Tr. 124 – 124). During the colloquy, however, counsel appears to have carefully avoided eliciting from Ostrander the *reasons* Ostrander "decided" to reject the plea offer. Ostrander maintains that he

---

[7]    Hooper does not support the court's decision to reject as "self-serving" Ostrander's allegation about counsel's misadvice where the Hooper court ruled, "We agree with Hooper that his lawyers' representation was not within the realm of competence demanded of attorneys in criminal cases.... Although we find that the legal representation provided by Hooper's counsel fell below the level of reasonable competence required of attorneys representing a criminal defendant, we conclude that the attorneys' errors did not prejudice Hooper.

rejected the plea offer solely because counsel was adamant that the law regarding double jeopardy was such that Ostrander could not be convicted of attempted capital murder for hire after pleading guilty to solicitation of capital murder.

68.    Ostrander's assertion that counsel adamantly advised him to reject the plea offer is implicitly supported by the trial and appellate court records that reveal that counsel was wholly committed to his double jeopardy theory where counsel strenuously, obdurately, but fruitlessly, raised and argued his doomed theory no less than seven times in four different forums. See, e.g., May 22 Tr. Pg. 12 -19; May 23 Tr. Pg. 105 – 112; May 23 Tr. Pg. 131 – 132; Sent. Tr. Pg. 6 - 10; Petition for Appeal to Va. Ct. App. Pg. 17 -20 (No. 2194-06-1); Appeal Brief to Va. Ct. App. Pg. 8 – 14 (No. 2194-06-1); Petition for Appeal to Va. S.Ct. Pg. 12 – 15 (No. 080733).

69.    Thus, the facts and circumstances in this case demonstrate the habeas circuit court's ruling was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding when, *inter alia*, it rejected as merely a "self-serving ... current allegation" Ostrander's well-pled allegation, namely, that he rejected the Commonwealth's plea offer based on counsel's misadvice.

<u>Ostrander Would Have Accepted The Plea Offer</u>

70.    The plea offer was very favorable to Ostrander. First, a conviction by the jury was inevitable because the Commonwealth's evidence against

Ostrander was overwhelming. The evidence included lengthy audio recordings of Ostrander planning and orchestrating the "hit" with the "hit man" (who was an undercover police officer), as well as telephone logs indicating numerous telephone calls between Ostrander and Fleming regarding the "hit," (May 22 Tr. Pg. 132 – 140); physical evidence, including cash Ostrander gave to the hit man as payment for the intended murder, and slips of paper upon which Ostrander had written what he believed to be the intended victim's vehicle license plate number, (May 22 Tr. Pg. 147 – 149; May 23 Tr. Pg. 53), and; the anticipated testimony of a litany of law enforcement agents who in fact did testify that they either heard or observed Ostrander as he orchestrated the "hit." (May 23 Tr. Pg. 48 – 53). In the face of this evidence, Ostrander had no defense and, in fact, offered none.

71. Additionally, the plea "cap" of 20 years for both charges was less than the statutory minimum sentence Ostrander could have received upon conviction for both charges. The sentence range upon convictions for solicitation to commit capital murder, § 18.2-29, and attempted capital murder for hire, §§ 18.2-31 & 18.2-25, was 5 to 40 years, and 20 years to Life, respectively. Hence, the statutory minimum Ostrander faced upon what was a virtually certain conviction for both charges was 25 years where his maximum exposure was Life plus 40 years. Based on the strength of the Commonwealth's evidence against Ostrander, the plea offer was his only realistic opportunity to avoid a prison sentence much longer than 20 years.

28

72.     However, Ostrander decided to reject the offer based on counsel's assurances to Ostrander that he could completely avoid a conviction for attempted capital murder for hire by pleading guilty to the solicitation charge and then moving for the dismissal of the attempted capital murder charge based on double jeopardy grounds. However, counsel's advice was unreasonable and wrong under both the circumstances of the case and the law on double jeopardy.

73.     After conviction on both charges, the court sentenced Ostrander to 40 years incarceration with ten years suspended for an active sentence of 30 years — a sentence substantially greater than the 20-year sentence offered in the plea agreement.

## STANDARD OF REVIEW

74.     Strickland's two-prong performance and prejudice test applies where, as here, counsel's ineffective assistance allegedly caused the defendant to reject an advantageous plea agreement and proceed to trial. Strickland v. Washington, 466 U.S. 668 (1984).

### Trial Counsel's Deficient Performance

75.     For the reasons given (supra ¶¶ 60 - 64), trial counsel's advice that Ostrander should reject the favorable plea offer because Ostrander would, under double jeopardy grounds, avoid conviction for attempted capital murder for hire if he pleaded guilty to solicitation to commit capital murder, was contrary to settled law, and, therefore, "counsel's representation fell below an objective standard of reasonableness." (Strickland, 466 U.S. at 690).

29

## Ostrander Was Prejudiced

76.   In Lafler v. Cooper, 566 U.S. ___,132 S.Ct. 1376, 182 L.Ed.2d 398

(2012),[8] the Supreme Court reiterated that to establish Strickland prejudice a

defendant must "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different." Lafler, 132 S.Ct. at 1384 (quoting Strickland, 466 U.S. at 694).

77.   In the context of pleas, a defendant must show the outcome of the

plea process would have been different with competent advice.  Where, as here,

a defendant alleges that the ineffective advice led not to an offer's acceptance

but to its rejection, having to stand trial, not choosing to waive it, is the prejudice

alleged.

78.   In these circumstances Ostrander must show that but for the

ineffective advice of counsel; A) "there is a reasonable probability that the plea

offer would have been presented to the court (i.e., that [Ostrander] would have

accepted the plea and the prosecution would not have withdrawn it in light of

intervening circumstances), [B)] that the court would have accepted its terms,

and [C)] that the conviction or sentence, or both, under the offer's terms would

have been less severe than under the judgment and sentence that in fact were

imposed." Lafler, 132 S.Ct at 1385.  Ostrander has made the requisite showing

under Lafler.

---

[8]     Lafler v. Cooper was decided March 21, 2012, after the habeas circuit court entered its order
dismissing Ostrander's habeas petition on May 24, 2011.

79. (A) There is a reasonable probability the Commonwealth's plea offer would have been presented to the court. For the reasons presented herein, (supra ¶¶ 70 -73), it is clear that Ostrander would have accepted the plea offer. Additionally, there is nothing in the record to suggest the prosecution would have withdrawn the plea because of intervening circumstances. Indeed, no such intervening circumstances were possible where the Commonwealth waited to present the plea offer until the very beginning of Ostrander's jury trial.

80. (B) The trial court would have accepted the terms of the plea offer and nothing in the record suggests otherwise. On the contrary, at the time of the plea offer Ostrander had no felony convictions on his record. (See, e.g., "The Court is going to instruct you [jury] as a matter of fact, which you shall believe is true, the defendant [Ostrander] does not have a prior felony conviction.) (May 23 Tr. Pg. 59 – 60). No violence occurred related to the charges Ostrander faced, and the Commonwealth had neither dismissed nor *nolle prosequied* any charges related to the charges for which Ostrander was tried. These facts make probable that the trial court would have accepted the plea.

81. (C) Finally, the sentence under the plea offer's terms would have been less severe than the sentence that in fact was imposed. Again, the trial court sentenced Ostrander to 40 years incarceration with ten years suspended leaving him to serve an active sentence of 30 years — a sentence substantially greater than the 20-year sentence he would have received had he accepted the plea.

31

82. Even without the guidance afforded by Lafler v. Cooper, the law was settled such as to warrant habeas relief for Ostrander.

83. A criminal defendant is entitled to effective assistance of counsel at all critical stages in the criminal proceedings, including during plea negotiations. The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case. "Effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F. 3d 492, 496-97 (2d Cir. 1996) (citations and internal quotation marks omitted).

84. "[I]t follows that '[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" United States v. Gordon, 156 F. 3d 376, 380 (2d Cir. 1993) (quoting United States v. Day, 969 F. 2d 39, 43 (3d Cir. 1992) (internal alteration notation omitted)). Where a trial attorney "grossly underestimat[es]" his client's sentencing exposure, the attorney has "breached his duty as a defense lawyer in a criminal case 'to advise his client fully on whether a particular plead to a charge appears desirable.'" Id. (Quoting Boria, 99 F. 3d at 496).

## ARGUMENTS AND AUTHORITIES (CLAIM – (B))

The trial court erred in denying Ostrander's motion to dismiss on double jeopardy grounds, as Ostrander's plea of guilty to solicitation to commit murder, a lesser included offense, barred the subsequent prosecution for attempted capital murder. (Presented in App. Br., Record No.2194-06-1 and Pet. for App. to VA. S.Ct., p.2-3, Record No. 080733)

32

85.   The double jeopardy clauses of the United States and the Virginia Constitution (U. S. Const. Amend. V, and Va. Const. Art. 1, Sec. 8, respectively) embody three guarantees.  Commonwealth v. Hudgins, 269 Va. 602, 604-606, 611 S.E.2d 362 (2005).  They protect against (1) a second prosecution for the same offense after acquittal, (2) a prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 165 (1977); Blythe v. Commonwealth, 222 Va. 722, 725, 284 S. E.2d 796 (1981.  Two offenses will be considered the same when (1) the two offenses are identical, (2) the former offense is lesser included in the subsequent offense, or (3) the subsequent offense is lesser included in the former offense. Martin v. Commonwealth, 221 Va. 720, 722, 273 S.E.2d 778 (1981).  In Blockburger v. United States, 284 U.S. 299 (1932), the Untied States Supreme Court outlined the test for determining the efficacy of a double jeopardy claim. There, the court states as follows:

> 86.   The applicable rule is that where the same act or transaction constitute a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Id at 304. This test emphasizes the elements of the two crimes.  If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. Brown v. Ohio, 432 U.S. 161 (1977).  In applying the Blockburger test, the court

considers the offenses charged in the abstract, without reference to the particular

facts of the case under review. Coleman v. Commonwealth, 261 Va. 196, 200,

539 S.E.2d 732 (2001); see also Schmuck v. United States, 489 U.S. 705, 716-

17 (1989) (comparison of offenses appropriately performed by reference to

statutory elements rather than conduct proved at trial).

87.    In the instant case, the offense of solicitation to commit murder, Va.

Code Sec. 18.2-29, is a lesser included offense of attempted capital murder, Va.

Code Secs. 18.2-31, 18.2-25.  The solicitation statute provides, in pertinent part:

"Any person who commands, entreats, or otherwise attempts to persuade

another to commit a murder is guilty of a felony punishable by confinement in a

state correctional facility for a term not less than five years or more than forty

years." Va. Code Sec. 18.2-29.  The portion of the attempted capital murder

statue under which Ostrander was charged provides as follows:  "The following

offenses shall constitute capital murder, punishable as a Class 1 felony:...2.  The

willful, deliberate, and premeditated killing of any person by another for

hire;...Va. Code Sec. 18.2-31(b).

88.    Looking to these two statutes, it is clear that solicitation to commit

murder is a lesser-included offense of attempted capital murder when the capital

murder is murder for hire.  Although the attempted capital murder charge

requires proof of a fact that the other does not, the solicitation charge does not

require proof of any fact that the other does not.  Looking at the statutes in the

abstract, all of the elements of solicitation to commit murder are contained in the

attempted capital murder for hire statute. One cannot commit attempted capital murder for hire without first soliciting someone to commit the murder. The gist of this particular section of the capital murder statute is that the defendant *solicited* another individual to commit the murder. Therefore, under the Blockburger test, the solicitation charge is a lesser-included offense of the attempted capital murder charge. As such, the prosecution for the attempted capital murder was barred by Ostrander's plea of guilty on the solicitation to commit murder charge.

89.    Even if this court should find that the multiple prosecutions did not offend Ostrander's rights under the Double Jeopardy Clause, clearly, the imposition of multiple punishments also violates the constitutional guarantee protecting a defendant from multiple punishments for the same offense. The double Jeopardy Clause protects a defendant from multiple punishments for the same offense, and since under the traditional Blockburger analysis, a lesser included and a great offense are the "same," the conviction and punishments for both offenses violate this constitutional guarantee.

90.    Therefore, the conviction for attempted capital murder must be reversed, as the conviction and punishment on this offense as a violation of Ostrander's Fifth Amendment right under the double Jeopardy clause of the United States and Virginia constitutions.

## ARGUMENTS AND AUTHORITIES  (CLAIM – (C))

The trial court erred in ruling that venue was proper in the City of Chesapeake. (Presented in Pet. App. to VA. S.Ct., p.3, Record No. 080733).

91.     Virginia Code Section 19.2-244 provides that the prosecution of a criminal case shall be had in the county or city in which the offense was committed. The burden in a criminal case is upon the commonwealth to prove venue by evidence which is either direct or circumstantial. Pollard v. Commonwealth, 220 Va. 723, 261 S.E.2d 328 (1980). The evidence to establish venue in a criminal case must be sufficient to present a "strong presumption" that the offense was committed within the jurisdiction of the court. Davis v. Commonwealth, 14 Va. App. 709, 419 S.E.2d 285 (1992). A finding of venue is a factual determination made by the trial court. The inquiry on appeal is "whether the evidence, when viewed in the light most favorable to the commonwealth, is sufficient to support the [trial court's] venue findings." Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990).

92.     In order for venue to be in a particular city or county, all of the elements of an offense must have been committed in that particular city or county. See Green v. Commonwealth, 32 Va. App. 438, 449, 528 S.E.2d 187, 192 (2000) ("[V]enue is appropriate in any jurisdiction where the required elements of the offense have been established."). The court in Green rejected the Commonwealth's argument that venue lay where any part of the offense was committed. The Court found that the completed offense must have occurred in a particular city or county for venue to be proper. The mere fact that police of a certain jurisdiction investigate a crime cannot support an inference that the crime

36

occurred within their jurisdiction. <u>Sutherland v. Commonwealth</u>, 6 Va. App. 378, 368 S.E.2d 295 (1988).

93.     The evidence in this case was not sufficient to show that all of the elements of the offense of attempted capital murder were committed in the city of Chesapeake. There is actually very little evidence of any activities that took place in the City of Chesapeake. Ostrander picked up Mr. Fleming, Agent Kroczak and Agent Koler at the ABL Sports Grille in the City of Chesapeake. They did not stay at the restaurant or conduct any business at the restaurant. They then drove around the Virginia Beach/Chesapeake area. Although they drove past Mr. Miller's residence and Peake's residence in the City of Chesapeake, all of the plans made involved the hit man killing Mr. Miller at his business in Virginia Beach. No plans or schemes were agreed upon for killing Mr. Miller at his home in Chesapeake. Any direct acts that were taken toward the commission of the offense were taken in Virginia Beach, when the individuals were outside Mr. Miller's business and determined how the hit would occur.[9] Although the Commonwealth argued at trial that the ATM machine was located in Chesapeake, and that this established venue in Chesapeake, there is no testimony in the record establishing that the ATM machine was located in Chesapeake.

---

[9]     Ostrander does not concede that any direct acts were taken toward the commission of the offense. However, if this Court should find that sufficient direct acts were taken to establish an attempt to commit the crime, Ostrander asserts that these acts occurred in Virginia Beach, not in the City of Chesapeake.

37

94.    Therefore, venue was improper in the city of Chesapeake and the conviction must be reversed.

## ARGUMENTS AND AUTHORITIES (CLAIM – (D))

The trial court erred in refusing to grant a mistrial when the Commonwealth presented evidence of Ostrander's prior criminal record. (Presented in Pet. App. to VA. S.Ct., p.2-3, Record No. 080733).

95.    During the presentation of the Commonwealth's case-in-chief, Detective Kroczak, and eighteen-year law enforcement veteran, testified that Ostrander had told him that he had a "prison number." This testimony had already been ruled inadmissible in the trial court's order of May 19, 2006. Nevertheless, the Commonwealth's witness deliberately presented this testimony. Counsel for Ostrander immediately moved for a mistrial, but the request was denied. Rather, the trial court instructed the jury that Ostrander had not been convicted of any felonies. This instruction was not sufficient to cure the prejudice caused by the agent's testimony. The error in permitting the jury to hear this information was not harmless, and the conviction must be reversed.

96.    Generally, evidence of the commission of other crimes or offenses is inadmissible in criminal prosecution. Rider v. Commonwealth, 8 Va. App. 595, 597, 383 S.E.2d 25 (1989). It is also firmly established that the Commonwealth is not permitted to introduce evidence of the accused's bad character unless the accused has first offered evidence of his good character, thus placing his character in issue. Fields v. Commonwealth, 2 Va. App. 300, 304-306, 343 S.E.2d 379 (1986). Evidence of other crimes or other bad acts is excluded to

38

protect an accused "against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985) (citing Fleenor v. Commonwealth, 200 Va. 270, 274-75, 105 S.E.2d 160, 163 (1958)). Unfair prejudice occurs if the fact finder is permitted to infer that, because an accused has previously committed a crime — even a similar crime to that charged — the accused has a propensity to commit crime, or a particular type of crime and, therefore, committed the crime for which he or she is being tried. Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 233, aff'd en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993).

97.    The Fourth Circuit has held:

[w]hile we have reversed convictions in cases where evidence of other crimes had been improperly presented, in those cases the inadmissible evidence was not only prejudicial, but had been purposely introduced by the prosecution ... Absent such misconduct on the part of the Government counsel, the courts generally have discerned no reversible error where the trial court has acted promptly in sustaining an objection and advising the jury to disregard the testimony.

United States v. Dorsey, 45 F.3d 809, 816, 817 (4th Cir.), cert. denied, 515 U.S. 1168, 115 S.Ct. 2631, 132 L.Ed.2d 871 (1995)

98.    Here, the inadmissible evidence was prejudicial and was purposely introduced by the prosecution.  The Commonwealth's witness, in response to the Commonwealth's questions, presented testimony revealing that Ostrander had a prison number and had been convicted of a crime.  This law enforcement officer,

39

an eighteen-year veteran of police work, should have been well aware that this testimony was not admissible.  Moreover, the Court did not advise the jury to disregard the prejudicial testimony.  The instruction simply informed the jury that Ostrander had not been convicted of a felony.  However, the jury was still aware that Ostrander had a prison number and, in fact, the judge told the jurors that it was up to them to either believe or disbelieve that Ostrander had a prison number.  Certainly, the jury believed that Ostrander had previously been convicted of criminal behavior because, generally, the only way for Ostrander to have a prison number would be to have been a prisoner after conviction for a criminal offense.  Hence, a juror would reasonably believe that Ostrander had the propensity and capacity to hire an individual to commit murder.

98.    Ostrander was unfairly prejudiced by the jury hearing this information and the error was not cured by the instruction.  Thus, the conviction must be reversed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Ostrander respectfully requests that this Honorable Court AWARD to him a writ of habeas corpus, VACATE Ostrander's convictions and/or sentences, and ORDER a new trial and/or allow Ostrander to enter a plea (consistent with his representations in the assignment of error), or GRANT an evidentiary hearing to enable Ostrander to adduce additional facts in support of his claims.

Respectfully submitted,

Phillip James Ostrander, pro se

Phillip James Ostrander, #1124822
Augusta Correctional Center
1821 Estaline Valley Road
Craigsville, Virginia 24430

## DECLARATION OF TRUTHFULNESS

I affirm that I am the Petitioner in this Habeas Corpus Action and I know the content of the foregoing Petition for Writ of habeas Corpus and the attached Memorandum in support thereof; that it is true of my own knowledge, except as to those matters that are stated in it to be based on my own information and beliefs; and to those matters, I also believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Sept 10, 2013     Signed:

41

# EXHIBIT — A

PHILLIP JAMES OSTRANDER, #1124822
AUGUSTA CORRECTIONAL CENTER
1821 ESTALINE VALLEY ROAD
CRAIGSVILLE, VIRGINIA 24430


February 7, 2013


The Honorable Faye W. Mitchell, Clerk
Chesapeake Circuit Court
300A Courts Bldg.
307 Albemarle Drive
Chesapeake, Va. 23322

      Re:   Phillip James Ostrander  v. Gene Johnson, Director VDOC
             Record No. CL09001788-00

Dear Ms. Mitchell:

      Please give me the status of my pending petition for a writ of habeas corpus.

      In July 2009, my attorney, David B. Hargett, filed my petition for a writ of habeas corpus. On September 24, 2010, Hargett withdrew as counsel from my case.

      On March 4, 2011, then rendered *pro se*, I received a Motion to Dismiss from defendant's counsel, Kathleen B. Martin, Senior Assistant Attorney General.  I have not received any other correspondence from this court since I received Ms. Martin's motion to dismiss.

      Several months have passed since I received the motion to dismiss and the prison's law clerks tell me that the court generally does not take this long to render a decision.  Please give me the status of my petition.

      Thank your for your attention to this matter.

                           Very truly yours,

                           Phillip J. Ostrander


Cc:  Kathleen B. Martin