

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

PHILLIP J. OSTRANDER,

          Petitioner,

v.                             CIVIL ACTION NO: 3:13cv634

DIRECTOR, VIRGINIA DEPT. OF CORRECTIONS,

          Respondent.

## PETITIONER'S RESPONSE OPPOSING A MOTION TO DISMISS

The petitioner, Phillip J. Ostrander ("Ostrander"), *pro se*, submits the following response opposing respondent's motion to dismiss.

## THE PETITION SHOULD NOT BE DISMISSED AS UNTIMELY

### Statute of Limitations

1.     Ostrander asserts there exist grounds for equitable tolling in this case because, *enter alia*, the Chesapeake Circuit Court Clerk's Office misled him by repeatedly telling him his petition was still pending and that when he learned in February 2013 the court had entered the final order in May 2011, he continued to diligently pursue his rights by, among other things, promptly reinstating his case on the court's docket in order to appeal.

2.     Respondent answers that,

Ostrander has proffered no evidence as to when he or his family contacted the clerk's office.  The order dismissing

Ostrander's habeas petition was sent to the circuit court on March 22, 2011, and was entered two months later. If anyone had inquired on Ostrander's behalf during that time, the clerk's staff would have correctly responded the matter was pending.[1]

(Mot. Dis. Br. pp.5-6, ¶ 12).

3.    In Ostrander's certified habeas petition, however, he asserts, "Several times during the months after having received the motion to dismiss, Ostrander had family members contact the habeas circuit court to inquire about the status of his petition. At each inquiry, the family member reported to Ostrander that the court advised the family member that the petition was pending, that Ostrander should be patient, and that the court had no time deadline in which to rule." (Fed. Hab. Br. p.7 ¶ 19).

4.    Respondent appears to parse Ostrander's statement that family members repeatedly contacted the court on Ostrander's behalf "several times during the months after having received the motion to dismiss," to interpret such statement to refer only to the period of time between March 22, 2011 (the date the court received the respondent's proposed order of dismissal) and May 24, 2011, (the date the court entered the order of dismissal). Such interpretation is nonsensical respondent suggests that Ostrander repeatedly, diligently, inquired about the status of his case between March 22, 2011 and May 24, 2011, but then

---

[1] Respondent dismisses as "baseless" Ostrander's assertion that the clerk may mistakenly have sent a copy of the order to the attorney who abandoned Ostrander mid-habeas litigation because the attorney had "withdrawn from the case months earlier." (Mot. Dis. Br. p. 5 n. 2). However, respondent does not dispute Ostrander's assertion that he did not receive notice of entry of the final Order until February 19, 2013.

upon being told the case was pending, abandoned interest in the case for the next 21 months until Ostrander wrote to the court inquiring about his case on February 7, 2013.

5.     At any rate, Ostrander's mother, Lillian Ostrander, details her and her daughter's repeated efforts, at Ostrander's behest, to learn the status of Ostrander's case and how she, the daughter, and Ostrander were misled by clerk's office staff to believe his case was still pending.  (Exh. (A) — Lillian Ostrander Affidavit).[2]

6.     Respondent asserts "The petitioner also has not explained why he waited nearly two years to write the circuit court." (Mot. Dis. Br. p. 6 ¶ 13).  However, Ostrander and Lillian Ostrander have explained that rather than simply wait to write the court, Ostrander consistently, repeatedly inquired of the court about the status of his case.  Hence, Ostrander was materially situated as was the petitioner in Knight v. Schofield, 292 F.3d 709, 711 (11th Cir.2002).  The Knight court found,

> "[T]he fact that the Supreme Court of Georgia failed to notify
> Knight of its decision was certainly beyond Knight's control.
> Knight, as a pro se imprisoned defendant, exercised diligence
> in inquiring about the decision.  It is understandable that
> Knight did not make any inquiries until February of 1998
> because the Georgia Supreme Court clerk had assured him
> that he would be notified as soon as a decision was made.
> After over a year had passed, Knight, on his own initiative,
> contacted the clerk seeking information about the status of his

---

[2] Ostrander has requested an evidentiary hearing "to enable Ostrander to adduce additional facts in support of his claims." (Fed. Hab. Br. p. 41).

> case. Until the clerk responded, Knight had no way of knowing that his state remedies had been exhausted.

Knight, id. at 711. (Fed. Hab. Br. p. 12-13 ¶ 32). Where Knight waited some 18 months before on his own initiative contacting the clerk seeking information about the status of his case, Ostrander, through family members, routinely checked the status of his case which culminated in Ostrander's letter of inquiry directly to the clerk. (Fed. Hab. Br. Exh.—(A)).

7.    Notably, the Chesapeake Circuit Court found that Ostrander was "reasonably diligent" in pursuing his state habeas appellate rights and that to permit such appeal would promote "substantial justice." (Exh.—(B): Chesapeake Circuit Court Order (3/20/2013)).

8.    A finding regarding diligence is a finding of fact in the context of habeas corpus proceedings and other contexts. (Drew v. Dep't of Corrections, 297 F.3d 1278, 1293 n.2). Drew, upon which respondent relies, is factually distinct from the case at bar where the Drew Court found that Drew failed to act with diligence, and the appellate court held that the district court's finding was presumed correct and "subject to review for clear error." In the instant case, the Chesapeake Circuit Court, after considering Ostrander's verified pleadings, documentary evidence, and the respondent's objections, found as fact that Ostrander was reasonably diligent in pursuing his appeal.

9.     The state court factual finding of diligence must be presumed correct and this Court should defer to such finding.  This is especially so where, as here, the state court's finding appears to be well considered and deliberate.  When Ostrander learned that the Chesapeake Circuit Court had dismissed his habeas petition, he immediately filed to that Court his Motion to Reopen Time for Filing Appeal.  The court appears first to have filed the motion to reopen, then reconsidered such filing,[3] and then returned the motion to Ostrander with instructions that "This matter needs to be reinstated on the Court's active docket.  A motion to reinstate and an Order allowing reinstatement of the case must be prepared and presented for entry."  (Exh. — (C): Court Instructions & Returned Motion).  When Ostrander submitted the motion to reinstate, the court immediately granted the motion.

10.     The Chesapeake Circuit Court further indicated that it found Ostrander diligently pursued his state habeas rights and that the exercise of those rights was appropriate when the court directed Ostrander to remit a $20 filing fee and original Notice of Appeal to the court "as soon as possible."  (Exh. — (C), id.).  Thus, on this record it is clear that the Chesapeake Circuit Court's factual finding of diligence and its

---

[3] The returned motion to reopen bears the court's stamp indicating the court initially filed the motion, then lined through the stamp in red marker, and then attached to the returned motion the court's instruction that Ostrander refile a motion to reinstate.

determination that appeal was appropriate were well-considered and this Court should defer to such findings.

11.    Respondent cites five cases to support her argument that this Court should find Ostrander was not reasonably diligent.  None of the cited cases support respondent's argument because each is materially factually distinct from the facts at bar.

12.    First, respondent cites *School Board v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 376 S.E. 2d 319 (1989), for the proposition that "erroneous information that may have been given by court staff is not sufficient grounds to toll or extend the period for noting an appeal." (Mot. Dis. Br. p.6 ¶ 12).  Such reliance is misplaced.  In *School Board*, all parties were represented by counsel.  There, the court held that the court clerk's erroneous information to counsel that the court's order had not been entered did not extend the time for filing an appeal because the court's records are public and available to counsel for inspection.  Therefore, the court reasoned, because counsel chose a "shortcut" by requesting the clerk inspect the record for counsel rather than counsel inspecting the record himself, counsel could not then rely on the clerk's erroneous information to toll or extend the time for filing an appeal. In the instant case, Ostrander, an incarcerated lay litigant rendered *pro se* mid-litigation, could not himself inspect the public record to determine the status of his

case and had no choice but to rely on the erroneous representations by court staff.

13.     In essence, respondent argues that when a prisoner like Ostrander, ignorant of the law and court rules and unexpectedly proceeding *pro se* after having been abandoned by counsel mid-litigation, does not receive notice of a court's final order through no fault of his own, yet diligently and repeatedly inquires of the court about the status of his case but is misinformed by court staff that there has not been any order entered in the case, when the prisoner discovers the court has in fact previously entered a final order, the prisoner must not be permitted to appeal the order.  Were this Court to adopt respondent's argument and interpretation of caselaw in this regard, all *pro se* prisoner habeas litigants in this Commonwealth could, through mistake or malfeasance, be barred from appealing a circuit court decision.  Such a result is repugnant to any notion of fair play and constitutes a miscarriage of justice.  This is especially so where, as here, respondent was in no way prejudiced by allowing such appeal.

14.     Next, respondent cites *Untied States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) for the proposition that "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." (Mot. Dis. Br. p.6 ¶ 12).  Respondent's reliance on *Sosa* is similarly misplaced.  The *Sosa* Court rejected Sosa's assertion that he was

entitled to equitable tolling because, Sosa argued, "he did not understand

how the statute of limitations operated in his case." *Sosa*, at 512.

Ostrander does not argue that his ignorance of the statute of limitations

entitles him to equitable tolling. Rather, Ostrander argues that he is

entitled to equitable tolling because extraordinary circumstances beyond

his control prevented him from filing on time, and that after he received

notice of the order of dismissal he was exceptionally diligent in pursuing

his legal remedies.

15.    Next, respondent cites,

> *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (finding
> equitable tolling did not apply where petitioner did not receive
> notice Pennsylvania Supreme Court had denied his
> application for permission to appeal, but "did not exercise the
> requisite due diligence" by allowing more that 21 months to
> elapse from time he filed application until he inquired as to its
> status).

(Mot. Dis. Br. p. 6 ¶ 13).

16.    First "LaCava was represented by counsel during his

state collateral proceedings, including the filing of his petition for

allowance of appeal. Accordingly, LaCava was not entitled to

personal notice of the Pennsylvania Supreme Court's order.

"*LaCava*, at 276. Ostrander, by contrast, was rendered *pro se* after

habeas counsel abandoned him on September 24, 2010, eight

months prior to the Chesapeake Circuit Court order of dismissal on

May 24, 2011. Hence, Ostrander was entitled to personal notice of

the Chesapeake Circuit Court's order. It is undisputed that Ostrander did not receive such notice.

17.     More importantly, the *LaCava* Court noted that "LaCava concedes that once his petition for allowance of appeal was filed in February of 2000, he did nothing further to ensure that his claims were proceeding." LaCava, at 276. In contrast, Ostrander repeatedly inquired about the status of his pending case and was misadvised by court staff that the court had not yet ruled. (Fed. Hab. Br. p.7 ¶¶ 19 - 21; Exh. — (A): Lillian Ostrander Affidavit).

18.     Notably, *LaCava*, distinguishes itself from *Knight v. Schofield*, 292 F.3d. 709 (11th Cir. 2002). The *Knight* Court found Knight reasonably diligent on facts nearly identical to those at bar. (*LaCava*, at 278; Fed. Hab. Br. pp. 12-13 ¶¶ 32-33).

19.     Next, respondent cites,

> *Drew v. Dept. of Corrections*, 297 F.3d. 1278, 1288 (11th cir. 2002) (dismissing federal petition as time-barred because "rare and extraordinary remedy of equitable tolling" was not warranted, as petitioner's only effort to discover status of his state application was to send one single letter of inquiry to state court clerk's office sixteen months after state application was filed).

(Mot. Dis. Br. p. 6 ¶ 13). Unlike Ostrander, however, Drew "made virtually no effort to ascertain the status of his first habeas petition in the district court." *Drew*, at 1287. "Futhermore, [Drew] does not claim to have taken any steps ... such as ... seeking help from

9

people with the ability to go to the court personally, including the brother and aunt who had helped him with other aspects of his post-conviction challenges." *Drew*, at 1289. Ostrander, on the other hand, has demonstrated that although his mother and sister reside in Arizona and could not personally go to the court, at Ostrander's behest they repeatedly inquired of the court about the status of his case. (Exh. — (A), Lillian Ostrander Affidavit).

20.   Finally, respondent cites, "*Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). A petitioner's lack of diligence in pursuing his federal remedy generally acts to negate the application of equitable tolling." (Mot. Dis. Br. p. 6 ¶ 13). The facts in *Spencer* are wholly dissimilar to those at bar.

> Spencer waited until the final day of AEDPA's one-year limitations period before filing his second state motion for appropriate relief [MAR], thus allowing himself but a single day after the state court's final disposition in which to file his federal habeas petition .... That Spencer had only one day remaining in the limitations period is solely the result of his own strategic decision not to file his MAR until the final day before the one-year federal limitations period expired.

*Spencer*, at 630. The instant facts, however, establish that Ostrander did not make a strategic decision to delay filing his state notice of appeal and habeas petition for appeal.

21.   Moreover, unlike Spencer who "delayed at every juncture of his post-plea, state and federal proceedings," *Spencer*, at

630, when on February 19, 2013, Ostrander learned of the

Chesapeake Circuit Court's order of denial, within three days he filed

both a notice of appeal and a motion to reopen the time for filing an

appeal. When on March 6, 2013, Ostrander received the

Chesapeake Circuit Court's instructions to submit a motion to

reinstate, notice of appeal, draft Order, and filing fees, he complied

within three business days. Then, on April 1, 2013, when Ostrander

received the circuit court's Order granting his motion to reinstate his

case to permit his appeal, (entered March 20, 2013), four days later

on April 5, 2013, he filed his notice of appeal to the Chesapeake

Circuit Court, and 40 days later, May 15, 2013, his petition for appeal

to the Supreme Court of Virginia. When on June 7, 2013, Ostrander

received respondent's responsive pleading to Ostrander's petition

for appeal, Ostrander, despite the fact that he was confined to his

cell for a prison-wide lockdown from 6/9/2013 until 6/17/2013, did on

6/12/2013 file a handwritten brief in answer to respondent's

responsive pleading. Finally, when the Virginia Supreme Court

refused Ostrander's appeal on August 5, 2013, Ostrander filed with

this Court his federal habeas petition 35 days later on September

10, 2013.

     22.    Ostrander's aggressive pursuit of legal recourse after he

received notice of the Chesapeake Circuit Court's order of dismissal

is the type of extraordinary diligence from which the court can reasonably infer that Ostrander was reasonably diligent when inquiring about the status of his case prior to his receiving notice of the order of dismissal.

23.    Respondent next argues,

> Ostrander has not made the necessary showing of cause and prejudice to overcome his default. Ostrander argues there is cause for the default because he claims he did not know the final order had been entered until after the time for noting an appeal had passed. His argument fails for the same reasons he is not entitled to equitable tolling, as discussed *supra*.

(Mot. Dis. Br. pp. 8-9, ¶ 18). However, Ostrander has made the necessary showing of cause and prejudice for the same reasons he has shown that he is entitled to equitable tolling, (Fed. Hab. Br. pp.10-13, ¶¶ 28-33) where he has demonstrated, and at least one court has agreed, that through no fault of his own, and despite his diligence in pursuing his case, he was prevented from timely filing his notice and petition for appeal from the state habeas circuit court to the Virginia Supreme Court.[4] (Supra ¶¶ 1-7; Fed. Hab. Br. pp. 5-9, ¶¶ 15-26).

## Claim A

24.    Next, respondent argues,

---

[4] By Order entered March 20, 2013, the Chesapeake Circuit Court on habeas, overruling the very arguments and objections respondent again presents to this court, found "[Ostrander] was reasonably diligent in asserting the motion to reinstate on the active docket, and that substantial justice will be promoted by allowing such reinstatement on the active docket," and granted Ostrander's motion to reinstate to allow him to pursue his appeal to the Virginia Supreme Court.

> Furthermore, there is no merit to the petitioner's contention that his pro se status excuses the default. Ostrander's reliance on *Martinez v. Ryan*, 566 U.S. _____, 132 S.Ct. 1309 (2012), is misplaced because *Martinez* concerned only the right to counsel for an **initial** collateral review proceeding. The case did not also establish a right to counsel for a habeas appeal in state court.... [And] Ostrander had retained counsel when he filed his initial habeas pleading in state court.

(Mot. Dis. Br. p.9, ¶ 18).  (Original Emphasis; citation omitted.)

25.    Assuming, arguendo, that *Martinez* applies only to initial

collateral review proceedings, respondent has pretermitted Ostrander's

contention,

> *Martinez* application is appropriate because the habeas circuit court lacked the favorably dispositive legal basis presented in the intervening U.S. Supreme Court ruling in *Lafler v. Cooper*, 566 U.S. ___,132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), (Supra. at pg. 10, n.2).  Therefore, because Ostrander and the circuit court lacked *Lafler's* legal basis when formulating and adjudicating, respectively, Ostrander's ineffective-assistance-of-trial-counsel claim, Ostrander, as a practical matter, could not present such claim to the habeas circuit court.  Thus, where Ostrander's ineffective-assistance-of-trial-counsel claim could not be presented to the habeas trial court, state habeas appellate review was the initial-review collateral proceeding contemplated by *Martinez*.

(Fed. Hab. Br. p. 15, ¶ 37).

26.  Additionally, although Ostrander had retained counsel when he

filed his initial petition for writ of habeas corpus in the Chesapeake Circuit

Court, said counsel abandoned him mid-litigation on September 24, 2010,

rendering Ostrander *pro se* nearly six months before the respondent filed

her motion to dismiss on March 4, 2011, and her proposed order of

dismissal on March 22, 2011.  Therefore, that Ostrander had retained

counsel at the *filing* of his initial state habeas is of little consequence where

Ostrander was *pro se* at every other critical stage of initial and subsequent

habeas litigation.

> 27.    Respondent next argues,

> Ostrander also has not established any prejudice.  He alleges
> his ineffective assistance claim was "substantial and
> compelling" and that there was a "great probability" he would
> have prevailed on the merits.  However, the double jeopardy
> argument underlying the ineffective assistance claim was
> raised on direct appeal and decided adversely to the
> petitioner.

(Mot. Dis. Br. p. 9, ¶ 19).  Here, however, the direct appeal denial of

Ostrander's double jeopardy claim *strengthens* his claim of

ineffective assistance of counsel.  Simply stated, Ostrander asserts

that his counsel was ineffective for advising him to reject a favorable

plea agreement because, counsel advised, upon pleading guilty to

solicitation to commit murder, double jeopardy precluded his being

convicted of attempted capital murder for hire.  That the state

appeals court rejected Ostrander's double jeopardy claim — holding

that double jeopardy did not preclude such conviction —

underscores and validates Ostrander's argument that counsel was

ineffective for advising him to the contrary.  (See, e.g., Fed. Hab. Br.

p. 27 ¶ 68; p. 32 ¶¶ 83-84).  While it may be true that counsel's

performance is "presumed to be reasonable and should not be

second-guessed by the habeas court," (Mot. Dis. Br. p.11 ¶ 24), there can be no presumption of reasonableness where, as here, an attorney misadvises his client regarding settled law, about which counsel should have known, and about which counsel was specifically apprised by the prosecutor prior to trial. (Fed. Hab. Br. p. 25 ¶ 64).[5] Undoubtedly, Ostrander was prejudiced when he relied upon such misadvice to his substantial detriment.

28.    Next, respondent argues,

> With regard to the charge of attempted capital murder for hire, Ostrander testified under oath he knew he had been offered a plea agreement with "a cap of 20 years incarceration for both of the two charges," and that after "frequently" discussing the agreement with counsel, he rejected the offer and decided to go to trial.[6] If Ostrander had any reservations about his decision, he certainly had the opportunity to voice them to the trial court.

(Mot. Dis. Br. p.12 ¶¶ 25-26).  Such argument misses the point; Ostrander did not have reservations about his decision to reject the

_____

[5] Just prior to trial, the prosecutor specifically apprised trial counsel about <u>Ashford v. Commonwealth</u>, 47 Va. App. 676, 626 S.E. 2d 464, (2006) (Trial court did not abuse its discretion in failing to require Commonwealth to elect between charges of attempted capital murder for hire and solicitation of capital murder for hire, as the solicitation and attempt were both parts of a common scheme or plan; actions which took place were part of unbroken chain of events, in that defendant's solicitation of fellow inmate to kill defendant's wife prompted inmate's discussions with his attorney, which in turn led to defendant hiring an undercover police investigator posing as a "hit man.")

[6] Respondent makes much ado of Defendant Ostrander's inartful use of "frequently" to describe the extent of discussion he had with counsel about the plea agreement. However, the prosecutor first offered the plea agreement on the morning just before trial was to begin.  Hence, any frequent discussions Ostrander may have had with counsel about the plea agreement necessarily were conducted while Ostrander sat in the court bullpen awaiting arraignment and trial. (Tr. 5/23/2005).

plea agreement because he believed trial counsel who had assured him that double jeopardy precluded any conviction for attempted capital murder.  Thus, the issue before the court is not *whether* Ostrander decided to reject the plea offer, but *why* he decided to reject the offer.  (Fed. Hab. Pet. pp. 26-27 ¶¶ 66-69.)

29.     Respondent contends, "This Court may reject as self-serving the petitioner's current allegation that his plea of not guilty to the attempted capital murder charge was based on counsel's misadvice." (Mot. Dis. Br. p.12 ¶ 26).  However, it is beyond dispute that trial counsel was fully committed to his false belief that double jeopardy precluded Ostrander's conviction for attempted murder for hire after his having pled guilty to solicitation to commit murder, where counsel raised and argued his erroneous double jeopardy theory no less than seven times in four different forums.[7]  Thus, notwithstanding that well-settled law invalidated trial counsel's legal theory, counsel, proceeding under such theory, would have been derelict had he *not* insisted that Ostrander reject the plea agreement.  Under these facts, this court cannot reject as merely "self-serving" Ostrander's allegation that he rejected the plea agreement on counsel's insistent advice.

---

[7] See, e.g., May 22 Tr. Pg. 12 -19; May 23 Tr. Pg. 105 – 112; May 23 Tr. Pg. 131 – 132; Sent. Tr. Pg. 6 -10; Petition for Appeal to Va. Ct. App. Pg. 17 -20 (No. 2194-06-1); Appeal Brief to Va. Ct. App. Pg. 8 – 14 (No. 2194-06-1); Petition for Appeal to Va. S.Ct. Pg. 12 – 15 (No. 080733).

30.    Additionally, respondent suggests the court should reject Ostrander's allegation that he rejected the plea on counsel's advice because "Ostrander was not a criminal neophyte" because Ostrander's 1990 felony convictions were vacated in 1995 after he prevailed in a federal habeas corpus proceeding. (Mot. Dis. Br,. p. 12 n. 4). However, that Ostrander prevailed in earlier habeas proceedings is irrelevant to the case at bar. The habeas issues of 1995 (where Ostrander was represented by counsel and had little direct involvement in the habeas litigation), were wholly different from the instant complex legal issues regarding double jeopardy and trial counsel's misadvisement of the law which caused Ostrander to reject a favorable plea agreement.

31.    Next, respondent states,

> Ostrander also argues he is entitled to habeas relief under *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376 (2012), which was decided on March 21, 2012, ten months after the state circuit court dismissed Ostrander's habeas petition. This argument is baseless. First, *Lafler* in not retroactive because the Supreme Court merely applied *Strickland* to a particular set of facts and did not announce a new constitutional rule.

(Mot. Dis. Br. pp.12-13 ¶ 27). Again, respondent mischaracterizes Ostrander's argument. Ostrander does not argue for retroactive application of a "new rule" under *Lafler*. Rather, Ostrander argues that the state habeas court erred when it failed to correctly apply *Strickland* to the facts in Ostrander's case, and that had the state

habeas court done so, it would have reached the same results the

Supreme Court did when it applied *Strickland* to the facts in *Lafler*,

because the *Lafler* facts regarding a rejected plea agreement are

materially identical to those presented in this case.

32.     Respondent continues, "Second, even if *Lafler* were

retroactive, Ostrander's claim still fails because he cannot show **all** of the

factors required for him to prevail." (Mot. Dis. Br. p.13 ¶ 28) (Original

emphasis).  The *Lafler* factors are: A) "there is a reasonable probability

that the plea offer would have been presented to the court (i.e., that

[Ostrander] would have accepted the plea and the prosecution would not

have withdrawn it in light of intervening circumstances), B) that the court

would have accepted its terms, and C) that the conviction or sentence, or

both, under the offer's terms would have been less severe than under the

judgment and sentence that in fact were imposed." *Lafler*, 132 S.Ct at

1385.

33.     Specifically, respondent asserts Ostrander 'has not

established the Commonwealth would not have withdrawn the plea offer,

nor has he shown the trial court would have accepted it." (Mot. Dis. Br. id.)

34.     First, respondent makes the bald and legally incomplete

assertion that Ostrander has not established the Commonwealth would not

have withdrawn the plea offer.  Such assertion is "bald" because

respondent fails to support it with evidence or argument, and is legally

incomplete because *Lafler* requires Ostrander show the Commonwealth would not have withdrawn the plea *in light of intervening circumstances.*

35. Ostrander argued, "There is nothing in the record to suggest the prosecution would have withdrawn the plea *because of intervening circumstances.* Indeed, no such *intervening circumstances* were possible where the Commonwealth waited to present the plea offer until the very beginning of Ostrander's jury trial." (Tr. 5/23/2006 p.123; Fed. Hab. Br. p. 31 ¶ 79) (Italics added).

36. Additionally, though Ostrander has shown that it was practically impossible for intervening circumstances to cause the prosecution to withdraw its late-offered plea, few petitioners, especially those proceeding *pro se*, could "establish," that is, "prove" that the trial court would have accepted a reasonable plea that was not actually presented to the court — save, perhaps, by obtaining an affidavit from the trial judge to that effect.[8]

37. At any rate, Ostrander has shown that the court would have accepted the plea where Ostrander had no prior criminal convictions on his record, no violence occurred related to the charges Ostrander faced, nor

---

[8] Lafler requires a petitioner *show* — not "establish" or "prove" — the trial judge would have accepted the plea, where "show" arguably is a less demanding standard than is "establish" or "prove." See, e.g. Black's Law Dictionary, Ninth Edition (2009) — Establish: To prove; Show: To make (facts, etc.) apparent or clear by evidence.

had the Commonwealth dismissed or *nolle prosequied* any charges related to the charges for which Ostrander faced trial. (Fed. Hab. Br. p. 31 ¶ 80).

38.  Moreover, during trial, outside the presence of the jury, Ostrander testified under oath about the terms of the plea offer and that he rejected the plea offer (though he was not examined about, nor did he testify to, his reasons for rejecting the plea). If the trial judge had any reservations about the plea offer, he certainly had the opportunity to voice them on the record. He did not. For all these reasons, Ostrander has shown that the trial court would have accepted the terms of the plea, and has shown all the factors required for him to prevail under *Lafler*.

39.  Finally, respondent herself best elucidates why counsel's advice to Ostrander — that he reject a favorable plea agreement because he could not be simultaneously prosecuted for solicitation to commit murder and attempted capital murder for hire — was legally incompetent. Respondent argues,

> The Court of Appeals held that the trial judge correctly concluded double jeopardy principles did not bar Ostrander's simultaneous prosecution for solicitation to commit murder and attempted capital murder for hire. The court of appeals also determined Ostrander did not receive multiple punishments for the "same offense." The court held solicitation to commit murder was not a lesser-included offense of attempted capital murder for hire because a conviction for attempted capital murder for hire could be based on either hiring someone to kill or being hired by someone else to kill. An individual who was hired by another person to kill someone could not be convicted of solicitation to commit murder. Considered in the abstract, the offenses require

different elements of proof.  The state court's decision was neither factually nor legally unreasonable and is due deference by this Court.

(Mot. Dis. Br. pp.14-15 ¶ 31) (Citations omitted.)  Assuming, *arguendo*, the Virginia Court of Appeal's interpretation of Virginia law is correct, trial counsel's erroneous double jeopardy advice is obvious.

40.    Counsel believed, and argued to the Virginia courts of appeal, "One cannot commit attempted capital murder for hire without first soliciting someone to commit the murder." (Fed. Hab. Br. p. 35 ¶ 88).[9]  Such statement is an obvious misapprehension of the statute for attempted capital murder for hire because an individual can commit attempted capital murder for hire without first soliciting someone to commit murder when the person committing the attempted capital murder for hire was hired by another individual.

41.    Because facts adduced at trial established that Ostrander solicited someone to commit murder, but that Ostrander was not an individual hired by another to commit murder, at first blush a legal neophyte like Defendant Ostrander might believe that double jeopardy precluded prosecution for solicitation to commit murder and for attempted capital murder for hire.  However, trial

---

[9] Trial counsel's statement presented here and in Ostrander's federal habeas petition, is quoted verbatim from the legal briefs Ostrander's counsel submitted to the Virginia appellate courts on direct appeal.

counsel knew, and himself argued, that "in applying the *Blockburger* test [for determining the efficacy of double jeopardy claims] the court considers the offenses in the abstract, without reference to the particular facts of the case under review." (Fed. Hab. Br. p. 34 ¶ 86) (Citations omitted).  Clearly, the statute, when considered in the abstract, without reference to the particular facts of the case, permitted Ostrander to be prosecuted for both crimes.

42.    Trial counsel's incompetence aside, the respondent cannot have it both ways.  Respondent cannot credibly argue that trial counsel rendered sound and competent legal advice to Ostrander that he could not be simultaneously prosecuted for solicitation to commit murder and attempted capital murder for hire (Mot. Dis. Br. pp. 10-11 ¶¶ 22-24), while at the same time respondent argues that there exists a sound and competent legal basis to simultaneously prosecute Ostrander for solicitation to commit murder and attempted capital murder for hire. (Mot. Dis. Br. pp.14-15 ¶ 31).

43.    Simply stated, trial counsel either was wrong, and thus ineffective, for advising Ostrander that double jeopardy precluded his prosecution for both crimes, or trial counsel correctly advised Ostrander that double jeopardy precluded his prosecution for both crimes.  In other words, Ostrander either was wrongly advised, and

is therefore illegally imprisoned, or he was correctly advised and then wrongly prosecuted, and is therefore illegally imprisoned. For these reasons, Ostrander must prevail either on his ineffective assistance claim (Claim – A) or on his double jeopardy claim (Claim – B).

## Claims B, C, and D

44.   Ostrander disputes respondent's four-paragraph reply to claims B, C, and D, — (B) The trial court erred in denying Ostrander's motion to dismiss on double jeopardy grounds, as Ostrander's plea of guilty to solicitation to commit murder, a lesser included offense, barred the subsequent prosecution for attempted capital murder;  (C) The trial court erred in ruling that venue was proper in the City of Chesapeake; (D) The trial court erred in refusing to grant a mistrial when the Commonwealth presented evidence of Ostrander's prior criminal record.  In response to respondent's reply, Ostrander relies upon argument he presented in his federal habeas brief. (Fed. Hab. Br. pp. 32-41 ¶¶85-98).

## CONCLUSION

For all these reasons, this Court must deny respondent's motion to dismiss and must grant Ostrander's petition for writ of habeas corpus.

Respectfully submitted,

Phillip J. Ostrander, *pro se*

## DECLARATION

I affirm that I am the petitioner in this Action and I know the content of the foregoing Petitioner's Response Opposing A Motion To Dismiss, that it is true of my own knowledge, except as to those matters that are stated in it to be based on my own information and beliefs; and to those matters, I also believe them to be true. I declare under penalty of perjury that the foregoing is true and correct, and I understand that I may be prosecuted if the facts I have set forth are untrue.

Dated: _November 27, 2013_  Signed: _____

Phillip J. Ostrander, #1124822
Augusta Correctional Center
1821 Estaline Valley Road,
Craigsville, Virginia 24430

## CERTIFICATE OF SERVICE

I certify that on November 27, 2013, I did mail a copy of the foregoing Petitioner's Response Opposing a Motion To Dismiss, first-class postage prepaid, to counsel for respondent herein, Kathleen B. Martin, Senior Assistant Attorney General, 900 East Main Street, Richmond, Virginia 23219.

Phillip J. Ostrander, *pro se*